## MERRELL–SOULE CO. v. POWDERED MILK CO. OF AMERICA.

(District Court, W. D. New York. August 26, 1924.)

No. 488.

**1. Patents ⟨⬥⟩318(1) — Defendant held liable for profits from infringement.**

Defendant *held* liable for profits made from that part of its business which involved infringement of complainant's patent, though it made no profit on its entire business, on a finding by the master, supported by evidence, that the business was separable, and that the infringing part could have been carried on, and the profits realized, without aid from the other part.

**2. Equity ⟨⬥⟩409 — Presumption in favor of master's findings.**

It is not the province of the court to disagree with findings of the master, before whom the witnesses testified, on conflicting testimony, or upon testimony rejected by him as unbelievable, unless there was manifest error.

In Equity. Suit by the Merrell-Soule Company against the Powdered Milk Company of America. On exceptions to master's report. Modified and confirmed.

Howard P. Denison, of Syracuse, N. Y., for plaintiff.

Archibald Cox and Harry A. English, both of New York City, for defendant.

HAZEL, District Judge. The report of the master that the defendant company made profits from its infringement of plaintiff's process for making powdered milk, amounting to $57,481.83, embraces a complete discussion of the various questions involved, and gives reasons for disagreeing with the contention of the defendant, and little remains to be added thereto. He also found damages for $32,861.45, but recommends a judgment in favor of plaintiff for the profits only.

[1] Thirty-seven exceptions to the report have been filed by defendant, the most important arising from the finding that defendant conducted separable businesses— that its butter making and cream business was separable from the powdered milk business, in which the infringing Stauff process alone was used, and, further, that it could have purchased skim milk from farmers in sufficient quantities in the territory or within a reasonable distance from its plants at Sherman and South Dayton to make the powdered milk, and no doubt would have done so, had it not been for its butter making and cream business (a noninfringing business). The butter fats or cream was sold in the open market, and butter fats made into butter, which was sold to the Wilkinson Company and others.

Whether the master was right in deciding that there were recoverable profits in the powdered milk business depends entirely, as both parties concede, upon whether a required amount of skimmed milk could have been bought in the neighboring territory to the two plants; for, if it could not, then it became necessary, in order to make powdered milk, to buy whole milk, which was at a higher price than skimmed milk. If the businesses were single and unitary, there were no gains and profits. Then, as the evidence shows, there was a loss from the cream and butter sales, since the profits were from the powdered milk business. In fact, the powdered milk business amounted to about one-third of the entire business, and the amount received from sales to about one-half of the joint amounts received from sales of butter and cream.

It is contended in the main that the powdered milk industry was not profitable, since it cost $54\frac{1}{4}$ cents per hundredweight, and not $32\frac{1}{2}$ cents per hundredweight, as found by the master. This difference in price, however, was due to the fact that whole milk, instead of skimmed milk, was bought. Defendant could have bought skimmed milk only to produce the powdered milk, but its cream and butter business required whole milk. The average value of skimmed milk was 25 cents a hundred pounds in the accessible territory.

From my examination of the proofs I think the conclusions reached were not unwarranted by the facts and circumstances. The evidence was sufficient to show that both businesses were conducted as separate enterprises. I hesitate to adopt the view, in the absence of satisfactory evidence, that it was necessary for defendant, in order to conduct its powdered milk business, to buy whole milk.

[2] It is not the province of this court to disagree with the master, before whom the witnesses testified, upon conflicting testimony, or upon testimony rejected by him as unbelievable, unless there was manifest error. He was justified in rejecting the statement of Howe, an interested witness, that whole milk generally was bought, because skimmed milk was not obtainable. The

surrounding facts and circumstances, together with the purchases of skimmed milk by plaintiff in the specified territory, corroborate the finding. Defendant's contract to supply all the butter produced by it to Wilkinson Company, entered into after starting out to make powdered milk from skimmed milk only, and the large sales of cream in the open market, were significant items in testing the truth of defendant's assertions on this point. Although the books of defendant were kept as though it was engaged in a unitary business, its statement of account filed herein indicate separated businesses.

The questions relating to the possibility of buying skimmed milk daily in desired quantities in the territory nearest the defendant's plants were fully considered by the master. There were times, it is true, when it was necessary to buy whole milk and separate the cream therefrom for making powdered milk; yet it is thought, if reasonable effort had been made to purchase skimmed milk from the farmers, or if skimmed milk had not been secondary to whole milk, it could have been obtained in sufficient quantities. There was no substantial hindrance from lack of railroad facilities. The territorial situation and existing facilities for transportation of skimmed milk from different localities is fully discussed in the submitted report (main and supplemental report on exceptions), and reasons advanced for disagreeing with defendant's contention in relation thereto. It is not believed that the fluid skimmed milk would habitually have deteriorated because of transportation from the various specified points. It was shown that plaintiff had bought in the open market in 1910 to 1914, inclusive, a large quantity of skimmed milk in substantially the same territory wherein defendant's two plants were operated, and shipped the same to its plant at Arcade and made powdered milk therefrom. Nor is the contention established by the evidence that plaintiff by its daily purchase of skimmed milk, exhausted the supply or that it could not have purchased more had it desired to do so.

Defendant in its account included a credit of $17,440.79 for depreciation of tools and machinery, and $3,256.79 for depreciation of "real estate and buildings," under which the equipment and apparatus was listed. The master found that such depreciation amounted to $13,083.49 only, basing his figures on the testimony of plaintiff's witness Clark, whose figures, however, were estimates. He was unable, he testified, to procure from Mr. Howe any documents upon which to base a more accurate depreciation during the various years of operation. It was asserted that the books containing the required items had been destroyed, but the exhibit statements 1 to 17, taken from the yearly reports of the treasurer of the defendant, fairly disclose the value of these items. According to the exhibit sheet the total depreciation of tools, machinery, and equipment apparently amounted to $21,545.29, the amount being fairly ascertained by deducting ten per cent. per annum from the given values. Defendant's account therefore, in my opinion, should be credited with said amount, and two-thirds thereof allocated to the powdered milk business, inasmuch as it was testified that the milk-drying equipment depreciated twice as quickly as the equipment for other uses.

Defendant's account should also be credited with $807.48 for dismantling and removing equipment from Sherman to South Dayton. This expense, I think, should be charged as a part of the infringing business. The fact that the Sherman plant was sold at a substantial profit, necessitating removal of the equipment to South Dayton is not thought a sufficient reason for denying the credit.

Other exceptions to the master's report filed by defendant have been examined, but are found to be without merit, and must therefore be overruled. This court has not deemed it necessary to examine the conclusions with relation to reasonable royalties or damages.

The report of the master as to the recovery by plaintiff of the profits of the powdered milk business is approved, except as to depreciation of tools and equipment and dismantling of the Sherman plant.

Decree may be entered on two days' notice to defendant.